**DSQ PROPERTY COMPANY, LIMITED, Plaintiff–Appellee,**

v.

**John Z. DeLOREAN, Defendant–Appellant.**

**Nos. 89–1427, 89–1654.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 18, 1989.

Decided Dec. 4, 1989.

Rehearing Denied Jan. 18, 1990.

John L. Altieri, Jr. (argued), Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, Merle R. Jenkins, Jenkins, Augspurger, Reebel, Zameck & Rowe, Southfield, Mich., for plaintiff-appellee.

Mayer Morganroth, Southfield, Mich., Jack Weinberg (argued), Graubard, Moskovitz, Dannett, Horowitz & Mollen, New York City, for defendant-appellant.

Before KEITH and MARTIN, Circuit Judges; and GIBBONS, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

John DeLorean appeals the district court's grant of summary judgment against him in his attempt to prevent the enforcement of a judgment rendered against him in the United Kingdom. John DeLorean argues that the district court erred in finding (1) that he was personally

* The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

and properly served with process; and (2) that his settlement with the Trustee of the DeLorean Motor Company did not bar recognition of the United Kingdom judgment.

On October 12, 1987, the High Court of Justice, Chancery Division in London, England, awarded a default judgment of $54 million against John DeLorean to plaintiff, DSQ Property Company, Ltd., formerly DeLorean Motor Cars Ltd. On January 24, 1989, DSQ Property brought the instant diversity action in the United States District Court for the Southern District of New York to enforce the foreign country money judgment under New York law, N.Y.Civ.Proc.L. & R. § 5301 *et seq.* (McKinney 1978). The district court of New York transferred venue to the Eastern District of Michigan under 28 U.S.C. § 1404(a). Under section 1404(a), the applicable law is the law that would have applied in the Southern District of New York. *Van Dusen v. Barrack,* 376 U.S. 612, 636, 84 S.Ct. 805, 819, 11 L.Ed.2d 945 (1964).

The plaintiff, DSQ Properties Ltd., was created as the successor corporation to DeLorean Motor Cars Ltd., which went into receivership in Northern Ireland. DeLorean Motor Cars Ltd. manufactured the "DeLorean" automobile. These cars were distributed in the United States by the DeLorean Motor Company, which owned 75% of DeLorean Motor Cars Ltd. The DeLorean Motor Company was controlled by John DeLorean who owned 82% of the capital stock.

Both the United Kingdom judgment and the settlement with the bankruptcy trustee resolved claims arising out of agreements for the design of the "DeLorean" automobile. These agreements were entered by John DeLorean on behalf of DeLorean Motor Cars Ltd. and the DeLorean Motor Company with Colin Chapman, the Chairman of Lotus Cars Ltd. and owner of GPD Services, Inc. In these agreements, Chapman committed to undertake the design of the DeLorean automobile through his company, GPD Services, which was closely affiliated with Lotus. DeLorean and Chapman entered into a contract under which DeLorean Research Limited Partnership would provide GPD Services with an advance payment of $17,600,000. DeLorean Motor Cars Ltd. was to pay Lotus, which would actually perform the engineering work, Lotus's actual out-of-pocket costs on an ongoing basis.

On October 25, 1982, DeLorean Motor Company filed for bankruptcy under Chapter 11 of the Bankruptcy Code, and the Unsecured Creditors' Committee of DeLorean Motor Company was created pursuant to 11 U.S.C. § 1102(a)(1). DSQ Property was one of the largest creditors of DeLorean Motor Company and a leading member of the Unsecured Creditors' Committee. The Unsecured Creditors' Committee sued John DeLorean on behalf of the DeLorean Motor Company in Detroit and New York for diverting funds in the agreements with Lotus and GPD Services. Later, the bankruptcy proceeding was converted to a Chapter 7 proceeding, and the appointed trustee, David Allard, took over these suits. The suits were transferred to the Eastern District of Michigan for consolidation with the DeLorean Motor Company bankruptcy proceeding. On March 18, 1987, David Allard and John DeLorean entered into a stipulation whereby the parties agreed to submit to binding arbitration all the disputes and claims between them. The stipulation agreement provided in part that the scope of the arbitrator's jurisdiction and findings would not have any effect on claims and defenses of third-parties against the Trustee and/or John DeLorean. Before the suits went to arbitration, they were settled on May 28, 1987 in a stipulation approved by the district judge presiding over the bankruptcy litigation.

DSQ Property instituted suit against Lotus and its principals on January 28, 1986 based upon the various agreements for research and development for the manufacture of the "DeLorean" automobile. DSQ Property added John DeLorean as a defendant on July 24, 1987, alleging that he misappropriated funds from the DeLorean Motor Cars Ltd. under these agreements. John DeLorean failed to appear in the matter and a default judgment was entered in the London court.

After being transferred from New York, the district court held a hearing in Detroit on February 6 and 7, 1989 on the limited issue of effective service of process on the defendant John DeLorean in the United Kingdom action. The district court found as a matter of fact that John DeLorean had been properly served on August 20, 1987, and that the English court, therefore, did have jurisdiction when issuing the default judgment. John DeLorean filed a motion for reconsideration on the issue of effective service of process, but the district court denied his motion.

John DeLorean appeals the finding of the district court that he had been served with process about the London lawsuit. He contends that the district court incorrectly applied New Jersey law instead of New York law to determine that he was properly served. In its initial determination that DSQ Properties successfully served John DeLorean with process, the district court applied New Jersey law, reasoning that New Jersey was the state where the service allegedly was effected. Under New Jersey law, if a sheriff files that he served a defendant with process, it creates a presumption that service took place. *Garley v. Waddington*, 177 N.J.Super. 173, 425 A.2d 1084 (1981). A defendant then bears the burden to overcome this presumption by a preponderance of the evidence. *Id.* John DeLorean argues that New York law should govern the determination of whether service took place. Under New York law, the plaintiff would bear the burden to show that service was effected. *Torres v. Corpus*, 131 A.D.2d 463, 516 N.Y.S.2d 94, 95 (2d Dep't 1987).

■ We express no opinion on whether New York or New Jersey law was appropriate to determine the adequacy of service of process because we affirm the district court's factual finding that service was effected under either standard. In its Memorandum Opinion and Order of March 27, 1989, denying John DeLorean's petition for rehearing, the district court held that because it had found DSQ Properties's evidence to be more credible than John DeLorean's evidence, DSQ Properties had shown service of process under New York law as well as New Jersey law. Ample evidence supports the conclusion of the district court that the sheriff who served John DeLorean in New Jersey was present on John DeLorean's estate and properly identified the person upon which he served process as John DeLorean. In denying John DeLorean's motion to reconsider the service of process under New York law, the district court stated, "At the hearing of February 7, 1989, the Court, after weighing the evidence presented and observing the witnesses' demeanor, found the Deputy Sheriff to be more credible than defendant and the documents proffered by him." By finding that DSQ Properties's witness was "more credible," the district court satisfied the preponderance standard required by the more stringent New York law. This determination depended on an evaluation of the credibility of witnesses who presented conflicting testimony. It is not for us to attempt to second guess the determination made by the district court unless it was clearly erroneous. We find that it was not.

■ John DeLorean appeals the district court's finding that the United Kingdom judgment is enforceable notwithstanding the DeLorean Motor Company bankruptcy settlement. He contends that the claims brought by DSQ Properties in the United Kingdom judgment already had been resolved in the DeLorean Motor Company bankruptcy settlement. If DeLorean were correct, these claims would be precluded, as he contends, by *res judicata* and *collateral estoppel*.

We affirm the district court's holding that the United Kingdom judgment does not conflict with the DeLorean Motor Company bankruptcy settlement. *Caplin v. Marine Midland Grace Trust Company of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). The district court properly interpreted *Caplin* to find as a matter of law, that David Allard, the Trustee for the DeLorean Motor Company, was barred in the settlement negotiations from representing DSQ Properties, a creditor of the DeLorean Motor Company. In *Caplin*, a case decided under Chapter X of the

previous Bankruptcy Act, 11 U.S.C. § 501 *et seq.*, a bankruptcy trustee filed an action against the indenture trustee of the company undergoing reorganization based upon the indenture trustee's failure to meet its obligations to the company's debenture holders. The Supreme Court held that because any recovery would go to the individual debenture holders and not to the bankrupt company's estate, the bankruptcy trustee lacked standing to sue on their behalf. The Court based its decision on three concerns: (1) that the statutory scheme of bankruptcy reorganization nowhere suggested that the trustee should "assume the responsibility of suing third parties on behalf of debenture holders," 406 U.S. at 428, 92 S.Ct. at 1685; (2) that the bankrupt corporation had no claim against the indenture trustee, *id.* at 429–30, 92 S.Ct. at 1685–86; and (3) that a suit by the trustee on behalf of the debenture holders could be inconsistent with any independent actions they might bring themselves, especially where they would be unlikely to be able to agree on a single theory for a law suit, *id.* at 431–32, 92 S.Ct. at 1686–87. In *Caplin*, the Supreme Court expressly invited Congress to revise the Bankruptcy Act to allow such suits by a trustee. *Id.* at 434–35, 92 S.Ct. at 1688–89. But, when Congress overhauled the Bankruptcy Act in 1978, it expressly rejected an amendment that would have reversed the *Caplin* rule. 124 CONG.REC. H11,097 (Sept. 28, 1978) (rejecting § 544(c) of H.R. 8200 which would have over-ruled *Caplin*). *See In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222 (8th Cir.1987) *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). Thus, *Caplin* is still valid under the new Bankruptcy Code. *See also Williams v. California 1st Bank,* 859 F.2d 664 (9th Cir.1988) (holding that a trustee cannot represent the interests of the creditors even where the creditors have assigned their interests to the trustee).

■ The reasons that dictated the result in *Caplin* apply equally here. The Bankruptcy Code still has no provision providing for a bankruptcy trustee to sue third parties on behalf of creditors. Although, in this case, the bankrupt corporation did have a suit against the third party, its suit differed markedly from the suit filed by DSQ Properties in the United Kingdom. The settled claims involved money allegedly diverted by John DeLorean from the DeLorean Motor Company. The claims brought by DSQ Properties in the United Kingdom action involved money diverted by John DeLorean from DSQ Properties' predecessor company, DeLorean Motor Cars Ltd. The district court correctly followed *Caplin* in holding that a trustee, who lacks standing to assert the claims of creditors, equally lacks standing to settle them.

Even if a Trustee could represent a creditor, neither the bankruptcy settlement nor the agreement to arbitrate would bar the suit now before us because those proceedings did not concern the claims decided in the United Kingdom judgment. The scope of both the arbitrator's authority and the settlement agreement was limited expressly to "not include nor have any effect upon . . . (c) Claims and defenses of third parties against the Trustee and/or [John DeLorean]; (d) Claims and defenses of the Trustee and/or [John DeLorean] against third parties." DSQ Properties is such a third party to the settlement and arbitration agreements. DSQ Properties is not named in those agreements and it never signed them. Although DeLorean Motor Cars Ltd. was closely affiliated with the DeLorean Motor Company, it was not the same company. It was not a party to the bankruptcy proceeding in the Eastern District of Michigan and, indeed, its financial collapse was handled separately through receivership and liquidation in the United Kingdom. Neither *res judicata, collateral estoppel,* nor the virtual representation doctrine can apply because DeLorean Motor Company never represented the claims of DSQ Properties. Thus, the Trustee could not and did not settle the claims of DSQ Property, and the bankruptcy settlement does not bar enforcement of the United Kingdom judgment.

We also reject John DeLorean's argument that DSQ Properties waived its right to assert that the Trustee lacked standing

to settle DSQ's claims. Because the Trustee was acting only on behalf of the DeLorean Motor Company, there was nothing for DSQ Properties to waive.

We find that the district court properly rejected DeLorean's remaining arguments as without substance. For the reasons stated above, we affirm the district court.