UNITED STATES of America, Plaintiff,

v.

Howard K. SCHNICK and Michael W. Sadler, d/b/a Biscayne Book Store, and Cowley Distributing, Inc., Defendants.

No. 86–5042–CV–C–5.

United States District Court, W.D. Missouri, C.D.

Oct. 24, 1986.

Robert G. Ulrich, U.S. Atty., Kansas City, Mo., Robert D. Metcalfe, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for plaintiff.

Norman W. Lampton, Cronan, Robinson & Lampton, Columbia, Mo., for defendants Schnick and Sadler.

C. Christy Barton, Jefferson City, Mo., for defendant Cowley.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

The United States instituted this lawsuit in order to recover federal taxes, penalties and interest assessed against the defendants Howard K. Schnick and Michael W. Sadler for their operation of a book store. Additionally, the United States seeks to obtain a judgment against defendant Cowley Distributing, Inc. ("Cowley") for these same taxes and assessments based on the sale of the bookstore by Schnick and Sadler to Cowley. All parties have moved for summary judgment for a variety of different factual and legal reasons. However, for the following reasons, the Court concludes that Cowley's motion for summary judgment as to the United States, and as to Schnick's and Sadler's cross-claim, should be granted, and that the United States' motion for summary judgment should be granted as to defendants Schnick and Sadler.

### A. *Factual Background*

Defendants Schnick and Sadler formed a partnership and purchased a bookstore located in the Biscayne Mall, Columbia, Missouri, in October of 1978. The primary business of the bookstore was the sale of books, periodicals and magazines.

During the time that the bookstore was in operation, approximately 14 to 16 persons were employed as clerks, managers, and assistant managers in the retail sale of books and magazines. Until the time that it effectively ceased doing business in 1983, federal tax returns showing the amounts of federal withholding, F.I.C.A. and F.U.T.A. taxes withheld from wages paid to these employees were filed with the Internal Revenue Service. Although these federal tax returns were filed, defendants Schnick

and Sadler failed to make the tax payments required by those returns.

Because the bookstore began experiencing hard times, in January of 1984 defendants Schnick and Sadler began to negotiate with defendant Cowley for the sale and purchase of the bookstore. These negotiations lasted approximately one and a half months and culminated in the execution of a Bill of Sale on February 9, 1984, which was signed by defendants Schnick and Sadler and by John A. Cowley and John A. Cowley II, manager of defendant Cowley. This Bill of Sale provided that:

"It is hereby understood and agreed that the said first party [Howard Kenny Schnick and Michael W. Sadler] hereby convey all its rights, title and interest in and to the fixtures and merchandise, and the second party [Cowley Distributing, Inc.] is to assume liability for all accounts payable and other indebtedness incurred in connection with the acquisition of merchandise, inventory, and fixtures, as well as current payables and liabilities arising exclusively out of the operation of the business conducted at the two aforesaid locations."

On October 9, 1984, defendants Schnick and Sadler filed voluntary petitions in bankruptcy under Chapter 7 of Title 11, United States Code, in the United States Bankruptcy Court for the Western District of Missouri, case numbers 84–03215–C and 84–03216–C. Both of these defendants listed the Internal Revenue Service as a creditor.

On April 4, 1985, the trustee in bankruptcy for both Schnick and Sadler filed duplicate complaints against defendant Cowley in the United States Bankruptcy Court for the Western District of Missouri. In his duplicate complaints, the bankruptcy trust-

ee claimed that the alleged rights of the debtors Schnick and Sadler under the Bill of Sale to have Cowley pay the debtors' liabilities was an asset of the debtors' bankruptcy estates, and that the trustee was entitled to recover from Cowley, for distribution to creditors of the estates, all or most of the debtors' then outstanding liabilities, including that owed to the IRS. More specifically, the complaints by the trustee were in two counts. Count I was to require a turnover of assets of the estates under Section 542 of the Bankruptcy Code for any amounts due under the Bill of Sale. Count II was for specific performance of the Bill of Sale executed by the defendants.

The bankruptcy trustee's adversary complaints were tried on October 16, 1985. At the conclusion of the trial, the bankruptcy judge entered judgment against the trustee on the merits and dismissed his complaints.[1] This judgment was not appealed.

On February 25, 1986, the United States instituted the present action against defendants Schnick and Sadler and defendant Cowley.[2] In its petition, the United States claims that Cowley was obligated to pay off the federal taxes under the Bill of Sale, thereby making the United States a third-party beneficiary of the contract executed by the defendants. Defendants Schnick and Sadler cross-claimed against defendant Cowley alleging that if they are found liable, then Cowley is liable for the federal taxes under the Bill of Sale.

All parties now move for summary judgment. Defendant Cowley, in its motion for summary judgment, alleges that since the question of its liability to pay taxes under the Bill of Sale was litigated in the bankruptcy court, then the present action

1. The order of the Bankruptcy Judge provided that:

"This will confirm the bench order issued at the close of trial on October 16, 1985, that plaintiff failed to carry its burden of proof against defendant and that defendant failed to carry its burden of proof against plaintiff. "The Complaints are dismissed, each party to bear its own costs.

"So ORDERED this 30th day of October, 1985."

2. The amount of outstanding federal taxes, penalties, and interest assessed against defendants Schnick and Sadler total approximately $86,-117.17.

should be dismissed under the doctrine of res judicata.

## B. *Discussion*

Cowley contends that the United States cannot recover from it the federal tax liabilities of defendants Schnick and Sadler because it has been previously determined by the United States Bankruptcy Court that Cowley is not responsible for the payment of Schnick's and Sadler's tax liabilities under the Bill of Sale. In other words, Cowley alleges that the United States is bound by the findings and judgment of the Bankruptcy Court under the doctrine of res judicata. This Court agrees.

■ Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 522 (1979); *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir.1983). The rules of res judicata apply equally to the decisions of bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

■ The United States argues that since it was not a party to the adversary proceeding in bankruptcy, then the doctrine of res judicata does not apply. However, the courts have consistently held that a person may be bound by a judgment, even though not a party, if one of the parties to the suit is so closely aligned with his interests as to be his *virtual representative. Los Angeles Branch NAACP v. Los Angeles Unified School District*, 750 F.2d 731 (9th Cir. 1984); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984); *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582 (11 Cir.1983); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566 (Fed. Cir.1983) (whether parties' interest in a case are virtually representative of interest of a non-party is a question for the court); *Expert Elec., Inc. v. Levine*, 554 F.2d 1227 (2nd Cir.), *cert. denied* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) (one whose interests are adequately represented by another vested with authority of representation is generally bound by judgment even though he was not formally a party to the litigation). Thus, the first issue to be resolved here is whether a bankruptcy trustee is the virtual representative of all of the unsecured creditors, including the IRS, such that the United States can now become bound by the bankruptcy court's judgment.

In *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir.1978), the court provides examples of the types of relationships encompassed within the virtual representation doctrine: (1) presidents and sole stockholders are in sufficient privity to be deemed adequately represented by their companies; (2) parent corporations are virtually represented by their subsidiaries; (3) trust beneficiaries are adequately represented by the trustee of the trust; and (4) estate beneficiaries are bound by actions brought by the administrator. *Id.* at 1008. In addition, a labor union has been deemed to be the virtual representative of the employee members of the union. *International Union, United Auto, Aerospace and Agr. Implement Workers of America, UAW v. Acme Precision Products, Inc.*, 515 F.Supp. 537 (E.D. Mich.1981) (where union sues on behalf of represented employees, the judgment entered in such a suit acts as a bar to litigation brought by represented employees themselves at a later time if the same cause of action is asserted.)

The courts generally hold that a bankruptcy trustee is a representative of the creditors, both secured and unsecured, of the bankrupt estate. *See In re Woodmar Realty Co.*, 294 F.2d 785, 793 (7th Cir.1961) ("[T]rustee in bankruptcy represents every class of creditors of the bankrupt. He takes the same property rights which the bankrupt owned ... "); *Castle Cotton Mills Co. v. Gardner*, 207 F.2d 690, 692 (9th Cir.1953) (The property of the bankrupt is seized and administered thereafter

by the trustee in bankruptcy for the benefit of all creditors); *In re Bell & Beckwith*, 50 B.R. 422, 434 (Bankr. N.D. Ohio 1985) ("The Trustee, as representative of the estate, is required to pursue the rights of the estate in a manner which will best serve the interest of all creditors ... Therefore, it must be concluded that the Trustee is both able and entitled to represent the interest of all creditors of the estate ..."); *In re Benny*, 29 B.R. 754, 760 (N.D. Cal. 1983) ("The trustee is both an officer of the court and a representative of the bankrupt's creditors and has a duty to realize the maximum from the estate of the bankrupt for distribution to the creditors"). Thus, this Court concludes that the trustee in bankruptcy stood in the shoes of all of the creditors, including the IRS, and, therefore, the trustee virtually represented them all in pursuing the claims by defendants Schnick and Sadler against defendant Cowley.

This case is on all fours with the only recent case that has directly addressed this issue. In *In re American Hawk Enterprises, Ltd.*, 52 B.R. 395 (E.D. Va.1985), the trustee in a Chapter 7 bankruptcy proceeding brought an adversary proceeding against the president of the debtor corporation and a corporation related to the debtor corporation in an attempt to "pierce the corporate veil." The trustee then settled the case, and notice of the hearing and settlement was sent to plaintiff as a claim filing creditor. Plaintiff, however, did not attend the hearing and did not move to have hearing set aside. Instead, plaintiff brought a second action against the president and related corporation under a similar theory. *Id.* at 399.

The court held that "it is within the doctrine of res judicata that a trustee, under normal circumstances, represents all rights of stockholders and creditors and should be regarded as *identical for such purpose*." (emphasis added). *Id.* at 400. In so holding, the court quoted from *Throckmorton v. Hickman*, 279 Fed. 196, 202 (3rd Cir.1922), wherein the court noted:

"Bankruptcy stops, temporarily or finally, the business activities of a corporation. The trustee of a bankrupt corporation acquires such title to its property as the bankrupt itself had, and in addition, such as execution creditors may have ... a trustee in bankruptcy in an action to protect or to recover bankrupt assets stands for and in the place of creditors and stockholders of the bankrupt corporation. Therefore, we think it is within the doctrine of res judicata that such an officer representing in full measure all rights of stockholders and creditors should be regarded as identical with stockholders and creditors who theretofore had exerted rights in their own behalf." *Id.* at 400.

The Court finds these cases persuasive and concludes that for res judicata purposes, the trustee in bankruptcy adequately represented the interests of the IRS such that the trustee could be properly deemed a virtual representative in his action against Cowley based on the Bill of Sale.

■ The United States further argues that the action is not barred by res judicata since the "identity of causes of action" requirement is not met. According to United States, the distinction lies in the fact that the bankruptcy proceeding involved a suit for a turnover of assets of the estates of Schnick and Sadler pursuant to Section 542 of the Bankruptcy Code and for specific performance of the contract, while the present action is brought by the United States to recover monies due to it as a third-party beneficiary under the Bill of Sale. In any event, the United States argues that it is impossible to determine with any degree of certainty whether the bankruptcy judge ruled on one or both of the trustee's theories of recovery. While the bankruptcy judge's order was somewhat unclear as to its particular findings, the Court concludes that the causes of action in both suits are virtually identical for res judicata purposes.

In determining whether the "same cause of action" or "claim" is involved, the Fifth

Circuit in *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984) applied the transactional test of the Restatement (Second) of Judgments. Section 24 of the Restatement (Second) of Judgments provides that: "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger and bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant *with respect to all or any part of the transaction,* or series of connected transactions out of which the action arose." (emphasis added)

Comment c to Section 24 of the Restatement provides that:

"Transaction may be single despite different harms, substantive theories, measures or kinds of relief ...

"That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."

In the instant lawsuit, the Court finds it hard to draw a real distinction between the trustee's action for specific performance based on the Bill of Sale and this action by the United States as a third-party beneficiary under the Bill of Sale. Since both causes of action derive from a "common nucleus of operative facts," the mere fact that a different theory of liability is involved does not mean that there are different causes of action. *See Ruple v. City of Vermillion, S.D.,* 714 F.2d 860, 861 (8th Cir.1983). If, as apparently determined by the bankruptcy judge, Cowley was not liable under the Bill of Sale to pay into the bankruptcy estate amounts representing liabilities of the bankrupt partnership, then it is difficult for the Court to see how it could find, consistent with that determination, that Cowley is obligated under the same Bill of Sale to pay off the federal taxes assessed against defendants Schnick and Sadler. *See Matter of Wilcher,* 56 B.R. 428, 435 (Bankr. N.D.Ill.1985) ("The doctrines of res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication.")

In addition, the Court finds that while the bankruptcy judge's order merely stated that "plaintiff failed to carry its burden of proof against defendant," an analysis of the trustee's complaint and the transcript indicates that the only way the bankruptcy judge could have reached this conclusion is by finding that defendant Cowley was not obligated, under the Bill of Sale, to pay off all of defendants Schnick's and Sadler's liabilities. Furthermore, the transcript itself contains repeated references by the attorneys and witnesses regarding the outstanding federal tax liabilities of the debtor, thereby putting the question of defendant Cowley's liability, under the Bill of Sale, to pay off the federal taxes directly in issue in the bankruptcy proceeding.

In summary, the Court concludes that the United States' action to recover federal taxes against defendant Cowley under the Bill of Sale is barred by the doctrine of res judicata since the trustee adequately acted as representative of all of the creditors of the debtors' estates and since the causes of action brought by the trustee to enforce contractual obligations arising out of the Bill of Sale are virtually identical to the present action by the United States to enforce the Bill of Sale as a third-party beneficiary.

 The Court further concludes that since defendants Schnick and Sadler have not seriously disputed the amount of taxes and penalties assessed against them for their operation of the bookstore, and since their cross-claim against defendant Cowley, based on the contractual liability arising out of the Bill of Sale, is similarly barred by the doctrine of res judicata, then the cross-claim by defendants Schnick and Sadler against Cowley must be dismissed, and

summary judgment must be properly entered in favor of the United States against defendants Schnick and Sadler.

Accordingly, it is hereby

ORDERED that defendant Cowley Distributing, Inc.'s motion for summary judgment is granted as to plaintiff United States' claim and defendants Schnick's and Sadler's cross-claim, and that all such claims against defendant Cowley Distributing, Inc. be dismissed with prejudice. It is further

ORDERED that plaintiff United States' motion for summary judgment is granted as to defendants Schnick and Sadler and that judgment be entered against them in the amount of $86,117.17, plus additional interest and penalties as allowed by law. It is further

ORDERED that all other outstanding motions in this action are denied as being moot.