In re R.C.S. ENGINEERED PRODUCTS
CO., Debtor.

Daniel C. HIMMELSPACH, Chapter
7 Trustee, Plaintiff,

v.

RAILCAR SPECIALTIES,
INC., Defendant.

RAILCAR SPECIALTIES, INC.,
Counter–Claimant,

v.

Daniel C. HIMMELSPACH, Trustee,
and Spartan Tube & Steel, Inc.,
Counter–Defendants.

Bankruptcy No. 91–30695.
Adv. Nos. 93–2072, 93–2108.

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

May 31, 1994.

Kenneth W. Kable, Saginaw, MI, for trustee.

Charles T. Hewitt, Bay City, MI, for Railcar Specialties.

Michael S. Hohauser, Bloomfield Hills, MI, for Spartan Tube.

## OPINION REGARDING STANDING TO BRING ALTER EGO ACTION

ARTHUR J. SPECTOR, Bankruptcy Judge.

On June 26, 1991, an involuntary petition for relief under chapter 7 of the Bankruptcy

Code, 11 U.S.C. § 101 *et seq.*, was filed against R.C.S. Engineered Products Company. One of the petitioning creditors was Spartan Tube & Steel, Inc. Rather than responding to the petition as such, the Debtor filed its own petition for relief under chapter 7 on July 22, 1991. The Court deemed this latter petition to be in essence a motion to convert the involuntary proceeding to a voluntary one, and entered an order granting the motion on July 29, 1991. The Debtor identified Spartan in its Schedule A–3 as a vendor holding an unsecured, undisputed claim in the amount of $51,933.68.

The day after filing the involuntary petition, on June 27, 1991, Spartan filed a complaint in Tuscola County Circuit Court against the Debtor and Railcar Specialties, Inc., seeking a judgment in the amount of $52,382.08.[1] Although the Debtor was nominally responsible for payment of this indebtedness, Spartan alleged that Railcar should also be held liable because it had "treated [the Debtor, a wholly owned subsidiary of Railcar] as its alter ego and [had] disregarded [the Debtor] as a separate entity and has treated it as a part of Railcar." Complaint in Tuscola County Circuit Court Case No. 91–010995 at ¶ 9. According to the complaint, the state "Court should disregard any existing separate entity of Railcar." *Id.* at ¶ 11. After the Debtor's bankruptcy case was converted to a voluntary proceeding, Spartan apparently "resumed prosecuting its alter ego action against Railcar only." Railcar's Complaint for Declaratory and Other Relief at ¶ 6.

On June 18, 1993, Railcar filed a motion to dismiss Spartan's complaint based on its contention "that the bankruptcy trustee retains the exclusive rights to pursue an alter-ego claim that applies equally to all creditors until the Trustee abandons such claim. In this case, the alter-ego claim is a general one that has not been abandoned by the Trustee. Therefore, Spartan has no standing to proceed with this claim." Railcar's Memorandum in Support of Motion to Dismiss at p. 9. In opposing the motion, Spartan asserted "that a bankruptcy trustee has no standing to bring an alter-ego suit," and advised the state court that the bankruptcy trustee "consent[ed] to [Spartan's] action." Spartan's Brief in Response and Opposition to Defendant's Motion to Dismiss at p. 5. To support the latter contention, Spartan attached to its brief an affidavit by the trustee in which he stated that he had "reservations as to whether [he has] standing to bring an alter-ego theory against Railcar," and that he "consent[s] to Spartan ... bringing its action to pierce the corporate veil against Railcar." Affidavit of Daniel C. Himmelspach at ¶¶ 6 and 8. Railcar's motion to dismiss was denied by the state court judge.

On June 22, 1993, the trustee initiated adversary proceeding no. 93–2072 against Railcar. The complaint alleged that Railcar "treated [the Debtor] as a division and not as a separate legal entity," and that "[c]orporate formalities were not observed." Trustee's Complaint at ¶ 51. According to the trustee, Railcar "should be held liable on the contracts of [the Debtor] because [the Debtor] served as a mere instrumentality or adjunct of [Railcar]." *Id.* at ¶ 59. Accordingly, the trustee maintained, "the corporate entity of [the Debtor] should be ignored." *Id.* Railcar's answer generally denied the trustee's allegations and set up various affirmative defenses.

On November 5, 1993, Railcar filed a Motion to Amend Answer to File Counter–Complaint for Declaratory and Other Relief in the bankruptcy proceeding, in which it sought leave to sue the trustee and Spartan to obtain "a binding declaration ... that one or the other does not have standing to maintain an alter ego action against Railcar." Railcar's Proposed Counterclaim for Declaratory and Other Relief at p. 7 (attached as an exhibit to Railcar's Motion to Amend An-

---

1. In filing this suit against the Debtor, Spartan violated the automatic stay. *See* 11 U.S.C. §§ 362(a) and 303; *see also, e.g., In re Greetis,* 98 B.R. 509, 513 (Bankr.S.D.Cal.1989) ("[T]he automatic stay arises promptly upon the filing of a petition under section 301, 302, *or 303.* It is not at all dependent upon entry of an order for relief."). Because neither the Debtor nor the trustee objected on this score, however, I will not address the question of whether any sanction is appropriate. *See In re S.I. Acquisition,* 817 F.2d 1142, 1154 n. 14 (5th Cir.1987); *In re Rozel Indus.,* 120 B.R. 944, 954 n. 3 (Bankr.N.D.Ill. 1990).

swer). The proposed counterclaim also requests "an order declaring that Spartan is automatically stayed from prosecuting the state court action by [11 U.S.C. §] 362." *Id.* Although this Court granted the motion on December 3, 1993, Railcar has not filed the counterclaim.

On November 18, 1993, however, Railcar did file a Complaint for Declaratory and Other Relief in the state court action. In this complaint, filed against Spartan and the trustee, Railcar alleged that "the Trustee changed his position [with respect to the standing issue by filing] its own alter-ego complaint against Railcar." Railcar's Complaint for Declaratory and Other Relief at ¶ 12. In the complaint, Railcar asserted that "there is no authority for the proposition that an individual creditor and the bankruptcy trustee can simultaneously pursue an alter ego action." *Id.* at ¶ 20. Railcar therefore asked the state court to "enter a binding declaration of the rights of Spartan and the Trustee that one or the other does not have standing to maintain an alter ego action against Railcar." *Id.* at p. 7. In response to this complaint, the trustee filed a notice of removal "based upon 28 U.S.C. § 1478(a)" [sic—28 U.S.C. § 1452(a)], which removed to this Court "the cause of action filed against him on the 18th day of November in 1993 in the Tuscola County, Circuit Court ... by Railcar ... seeking injunctive and other relief." [2] Notice of Removal at p. 1. This removal initiated adversary proceeding no. 93–2108.

On December 20, 1993, Spartan filed a Motion for Remand in adversary proceeding no. 93–2108, asking among other things that this Court "rul[e] that only the Petition for Declaratory Relief filed against the Trustee was removed from Tuscola County Circuit Court and not the cause of action of Spartan which was pending in that court." Spartan's Motion for Remand at pp. 3–4. Failing this relief, Spartan requested a remand of its cause of action against Railcar to state court. *See* Brief in Support of Motion for Remand at p. 5. Railcar requested "an order finding

that the entire State Court action has been removed." Railcar's Response to Motion for Remand at p. 4. For its part, the trustee filed a motion in both adversary proceedings on January 7, 1994, requesting that the proceedings be consolidated. All parties ask that this Court resolve the question of standing. *See, e.g.,* Spartan's Motion for Remand at pp. 3–4; Trustee's Supplemental Brief at p. 4; Railcar's Response to Motion for Remand at p. 4. Since there is unanimity on this latter point, I will first address the standing issue, and then deal with the various other matters before me.

Although not clearly articulated, Spartan took the position that the trustee and Railcar are precluded from raising the standing issue based on principles of equitable estoppel and waiver. The bases for this argument are the trustee's apparent change of heart regarding his right to pursue an alter ego action, and Spartan's claim that Railcar did not question Spartan's standing in state court in a timely or proper manner. *See* Spartan's Response to Motion to Consolidate at pp. 3–4.

■■■ The potential validity of this argument may depend on the nature of the objection to Spartan's standing. As stated in *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), the issue of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." It appears there can be no waiver or estoppel with respect to the question of constitutional standing. *See, e.g., In re Weaver,* 632 F.2d 461, 462 n. 6 (5th Cir.1980). But courts are divided as to whether a party can waive or be estopped from challenging an opposing party's prudential standing. *Compare, e.g., Thompson v. County of Franklin,* 15 F.3d 245, 248 (2d Cir.1994) (indicating that prudential standing is jurisdictional and therefore not subject to waiver) *with Norman v. Johnson,* 739 F.Supp. 1182, 1188 (N.D.Ill. 1990) ("Issues of prudential standing ... are not jurisdictional and can be waived.").

**2.** Although 28 U.S.C. § 1478 governed the removal of bankruptcy matters to federal court, it was amended in 1984, "changing references to 'the bankruptcy court' into references to the 'dis-

trict court,' and ... reenacted as 28 U.S.C. § 1452." *In re National Developers,* 803 F.2d 616, 619 n. 3 (11th Cir.1986).

Assuming *arguendo* that waiver or estoppel is possible, neither defense can prevail against the trustee. At no point did he renounce his right to bring an alter ego action. Nor is there any indication that the trustee tried to mislead Spartan or that he otherwise engaged in some form of misconduct. I therefore reject Spartan's contention that the trustee waived his right to assert standing or is equitably estopped from doing so. *See generally* 28 Am.Jur.2d *Estoppel & Waiver* § 27 (indicating that the doctrine of equitable estoppel requires a deliberate misrepresentation or "culpable negligence" by the party against whom it is invoked); *id.* at § 160 ("Generally, to make out a case of implied waiver of a legal right, there must be a clear, unequivocal and decisive act of the party showing such a purpose...."). And since the standing issue was properly raised by the trustee, no purpose would be served in addressing the question of whether Railcar waived or is estopped from raising that issue.

Spartan also obliquely suggested, without legal support, that there might be some preclusive effect to the state court's denial of Railcar's motion to dismiss. *See, e.g.,* Response to Motion for Preliminary Injunction, ¶ 6. Spartan sole "argument" for this dubious proposition[3] was that "Railcar now seeks another bite at the apple." *Id.* As this statement is more whine than argument, it will not be further addressed.

Turning to the merits, the alter ego cause of action creates an exception to "[t]he general rule of nonliability of shareholders for corporate obligations or conduct." 18A Am. Jur.2d *Corporations* § 852. When the doctrine is applied, "the corporate entity will be disregarded and the individuals owning the stock and the corporation treated as identical, with the result that such individuals will be personally chargeable with the acts and obligations of the purported corporation." *Id.* (footnote omitted). The doctrine is invoked if it is

> shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

W. Fletcher, *Fletcher Cyc. Corp.* § 41.10 at 615 (Perm. ed. 1990).

One source of authority for the proposition that the trustee may bring an alter ego action lies in 11 U.S.C. § 541(a)(1). With exceptions not relevant here, that section states that a bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." For purposes of this section, the term "property" includes "causes of action" owned by the debtor. *See* H.R.Rep. No. 595, 95th Cong. 1st Sess. at 367 (1977); S.Rep. No. 95–989, 95th Cong.2d Sess. at 82 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6322–6323, 5868; *see also Bauer v. Commerce Union Bank,* 859 F.2d 438, 440–41 (6th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). Thus if the Debtor could have brought an alter ego action against Railcar under applicable state law, the trustee can do likewise now. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 700 (2d Cir. 1989); *Steyr–Daimler–Puch of America Corp. v. Pappas,* 852 F.2d 132, 135 (4th Cir. 1988); *In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222, 1224–25 (8th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987); *Koch Refining v. Farmers Union Central Exchange,* 831 F.2d 1339,

---

**3.** *See City of Mt. Clemens v. United States Environmental Protection Agency,* 917 F.2d 908, 915 n. 6 (6th Cir.1990) ("[A] denial of a motion to dismiss is not the type of judgment that is given res judicata effect."); *cf. Department of Social Servs. v. Baayoun,* 204 Mich.App. 170, 176–77, 514 N.W.2d 522 (1994) ("[W]e reject plaintiffs' assertion that the trial court's denial of defendant's first motion for summary disposition barred his second motion [which was based on the same grounds as the first motion]. MCR 2.116(E)(3) allows for more than one motion for summary disposition to be filed."); *Goodrich v. Moore,* 8 Mich.App. 725, 728, 155 N.W.2d 247 (1967) ("[T]he denial of a motion for summary judgment does not preclude such a judgment being granted at a later stage in the same case.... By analogy the denial of such a motion would not preclude its being granted in a subsequent action on the same claim, after the first action is dismissed without prejudice.").

1343–44 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988).[4] Less clear is which state law is applicable.

A good argument could be made that Michigan law controls this case. Spartan is a Michigan corporation; the Debtor was doing business in Michigan; and Michigan is the forum state for both lawsuits. On the other hand, the Debtor incorporated under the laws of Delaware, not Michigan, and the consensus appears to be that the availability of an alter ego action should be determined by reference to the law of the state of incorporation. *See, e.g., Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132–33 (2d Cir.1993); *Bright v. Roadway Services*, 846 F.Supp. 693, 700 (N.D.Ill.1994); *Dowlatshahi v. Motorola, Inc.*, No. 89C8965, 1990 WL 43392, at *1 n. 1, 1990 U.S.Dist. LEXIS 3513, at *4 (N.D.Ill. Mar. 29, 1990), *rev'd on other grounds*, 970 F.2d 289 (7th Cir.1992); Restatement (Second) of Conflict of Laws § 307 (1971) (*quoted in Kalb*, 8 F.3d at 132–33). *But see Koch*, 831 F.2d at 1344 ("To determine whether this alter ego action is property of the debtor ..., we must turn to the law of the state in which legal or equitable title to the cause of action is asserted."). Further complicating the analysis is the fact that courts are split on the question of whether bankruptcy courts should follow the choice-of-law rules of federal common law, the forum state, or perhaps a nonforum state. *See generally In re Stoecker*, 5 F.3d 1022, 1028–29 (7th Cir.1993); *In re Southwest Equipment Rental*, No. CIV–1–90–62, 1992 U.S.Dist. LEXIS 21396, at *37 n. 48 (E.D.Tenn. July 9, 1992) (collecting cases).

Here, however, the parties assumed that Michigan law is controlling. *See, e.g.*, Spartan's Brief in Opposition to Trustee's Standing at p. 6; Trustee's Brief in Support of Trustee Standing at pp. 10–11; Railcar's Memorandum in Support of Motion to Dismiss at p. 6. I will therefore make the same assumption, without deciding the choice-of-

law issues mentioned. *See Stoecker*, 5 F.3d at 1029 ("Where ... the parties do not make an issue of choice of law, we have no obligation to make an independent determination of what rule would apply if they had made an issue of the matter."); *In re Marquis Products*, 150 B.R. 487, 492 n. 15, 23 B.C.D. 1647, 28 C.B.C.2d 702 (Bankr.D.Me.1993) ("'Ordinarily, [a] federal court should honor [the] parties' shared view as to applicable substantive law.'" (citation omitted)).

Not surprisingly, there appears to be no reported Michigan case in which a corporation sued its shareholder for a determination that the latter should be held liable for a corporate debt based on a theory of alter ego. The Michigan courts have therefore never specifically addressed the issue of whether a corporation has standing to bring this kind of action. However, a number of considerations lead me to conclude that it does have such standing.

As an equitable principle, the alter ego doctrine is flexible, with the courts adapting it as necessary in response to the specific facts of each case. *See In re Schlossberg v. State Bar Grievance Board*, 388 Mich. 389, 398 n. 7, 200 N.W.2d 219 (1972) ("'In determining whether the corporate entity should be disregarded ... each case is *sui generis* and must be decided in accordance with its own underlying facts.'" (citation omitted)). The case of *Wells v. Firestone Tire and Rubber Co.*, 421 Mich. 641, 364 N.W.2d 670 (1984) vividly illustrates this proposition. Wells was injured during the course of his employment with a corporation that was a wholly owned subsidiary of the Firestone Tire and Rubber Company. *Id.* at 645, 364 N.W.2d 670. After collecting worker's compensation benefits from Firestone's insurer, the plaintiff filed a product liability suit against Firestone based on the injuries he had sustained. *Id.* at 645–46, 364 N.W.2d 670. Firestone filed a motion "for summary judgment on the basis that plaintiff was

---

**4.** Federal common law may also supply a cause of action based on a theory of alter ego, at least in situations where recognition of corporate separateness would thwart federal policy. *See Federated Dep't Stores v. J.V.B. Indus.*, 894 F.2d 862, 870–71 (6th Cir.1990); *Laborers' Pension Trust Fund v. Sidney Weinberger Homes*, 872 F.2d 702,

704–05 (6th Cir.1988); *Holcomb v. Pilot Freight Carriers*, 120 B.R. 35, 43 (M.D.N.C.1990). The parties focused exclusively on state law, however, and therefore I will not consider whether the Debtor could impose alter ego liability on Railcar under federal law.

barred from bringing the action against Firestone by the exclusive remedy provision of the Michigan Worker's Disability Compensation Act of 1969, MCL § 418.131." *Id.* at 646, 364 N.W.2d 670. The trial court denied the motion because it "found that plaintiff was not an employee of defendant Firestone but of [Firestone's subsidiary, a] separate corporate entity." *Id.* The court of appeals reversed, and was affirmed by the supreme court.

The supreme court emphasized that Firestone treated its subsidiary more like a division of the parent corporation than a separate, autonomous corporate entity, and recognized that "the result [of its holding], in effect, [was] a 'reverse piercing' of [Firestone's] corporate veil." *Id.* at 650, 364 N.W.2d 670.[5] The court defended its conclusion by noting that, "[a]lthough traditionally the doctrine of 'piercing the corporate veil' has been applied to protect a corporation's creditors, or other outsiders, where the corporate entity has been used to avoid legal obligations, ... Michigan courts have recognized that it may be appropriate to invoke the doctrine for the benefit of a shareholder where the equities are compelling." *Id.* at 650–51, 364 N.W.2d 670. *See also id.* at 650, 364 N.W.2d 670 (A shareholder's "separate existence will be respected, unless doing so would subvert justice....").

Rather than utilizing the term "alter ego," as such, the majority in *Wells* spoke only in terms of "piercing the corporate veil." But since the court focused on whether Firestone's subsidiary operated independently of Firestone and whether it would be equitable to recognize the subsidiary's separate corporate status, *Wells* was in substance an alter ego case. *Cf. Permian Petroleum Co. v. Petroleos Mexicanos,* 934 F.2d 635, 643 (5th Cir.1991) ("The alter ego doctrine may also apply in 'reverse piercing' situations...."); *In re S.I. Acquisition,* 817 F.2d 1142, 1152 (5th Cir.1987) ("Under Texas law an alter

ego remedy is one distinct method of piercing the corporate veil." (footnote omitted)); *Ozark,* 816 F.2d at 1225 (describing the "alter ego doctrine" as one of "a number of different theories" underlying "an action to pierce the corporate veil"); *CNC Service Center v. CNC Service Center,* 753 F.Supp. 1427, 1449 n. 26 (N.D.Ill.1991) (" '[A]lter ego' is pretty much another way of expressing the same notion as 'piercing the corporate veil.' "); *In re Keene Corp.,* 164 B.R. 844, 851 (Bankr.S.D.N.Y.1994) ("[T]he doctrine of piercing the corporate veil [is] also known as alter ego liability...."). And since under *Wells* the *controlling* entity can successfully invoke the alter ego doctrine, it follows logically that the *controlled* entity could do likewise—or at least have standing to assert the doctrine. Stated differently, once one accepts the notion that use of the alter ego doctrine is not limited to third parties—i.e., parties other than the corporation or its shareholders—then there is no principled basis for stating categorically that the Debtor would not have a cognizable claim under that theory. *See Wodogaza v. H & R Terminals,* 161 Mich.App. 746, 754–57, 411 N.W.2d 848, *app. denied,* 429 Mich. 873 (1987) (holding that the defendant subsidiaries of a corporation which employed the injured plaintiff could not rely on the workers' compensation exclusive remedy provision, but implicitly accepting the subsidiaries' standing to argue that the corporate veil should be pierced). Thus I believe that *Wells* strongly supports the conclusion that the Debtor would have standing under Michigan law to bring an alter ego action against Railcar. *Cf. In re Lee Way Holding Co.,* 105 B.R. 404, 411 (Bankr.S.D.Ohio 1989) (concluding "that a corporation may assert a[n alter ego] claim against its principals" under Ohio law, and noting a case in which the Ohio Supreme Court "voiced ... [no] objection" to the fact that "a principal [sought] to disregard the corporate entity of a wholly owned subsidiary").

---

5. Although the court said it was piercing Firestone's corporate veil, it is more accurate to say that the subsidiary's veil was pierced. *See, e.g., Phar–Mor v. Coopers & Lybrand,* 22 F.3d 1228 (3d Cir.1994); *Cascade Energy and Metals Corp. v. Banks,* 896 F.2d 1557, 1575 n. 17 (10th Cir.), *cert. denied,* 498 U.S. 849, 111 S.Ct. 138, 112

L.Ed.2d 105 (1990). The issue in cases of this sort is whether the court will respect the separate identity of the corporate entity vis-à-vis its shareholder(s). The fact that the shareholder in *Wells* was itself a corporation (which is also the case here) is irrelevant from an analytical standpoint.

Other Michigan cases support this conclusion. In *Montgomery v. Central Nat'l Bank & Trust Co. of Battle Creek,* 267 Mich. 142, 255 N.W. 274 (1934), the supreme court dealt with the question of whether a grantor could enforce a use restriction on real estate that was made for the benefit of a corporation owned by the grantor but which was not a party to the conveyance. The court refused to apply "the general rule ... [that a use restriction] may not be made in favor of one not a party to the instrument," finding instead that as a matter of equity, the corporation's separate legal status should be disregarded. *Montgomery,* 267 Mich. at 146–48, 255 N.W. 274. *See also Brown Brothers Equipment Co. v. State Highway Comm'n,* 51 Mich.App. 448, 452–53, 215 N.W.2d 591 (1974) (The trial court did not err in considering lost profits of a corporation which was not a party to the lawsuit for purposes of determining the plaintiff's breach-of-contract damages, because "[e]quitable principles require this Court to disregard the legal fiction of separate corporate entity."). These cases are significant because in both instances the corporation clearly benefitted from the piercing of its own veil.

Spartan argued that allowing a corporation to bring an alter ego action against its shareholder is misguided because the "corporation would basically be suing itself." Spartan's Brief in Opposition to Trustee's Standing at p. 5. *Cf. In re Dakota Drilling,* 135 B.R. 878, 884 (Bankr.D.N.D.1991) ("It is troublesome ... to allow a corporation ... to pierce its own veil since it would have the effect of denying the corporation of its own corporate existence."). It is true that such an action, if successful, would in this case result in a determination that the Debtor and Railcar are one entity. But it is a distortion to say that the trustee is suing himself by filing his alter ego complaint against Railcar. The objective of the complaint is to obtain a determination that Railcar is liable for certain debts. The "single entity" analysis is simply a means of reaching that end, with no other legal or practical significance. *See CMS Energy Corp. v. Attorney General,* 190 Mich.App. 220, 232–33, 475 N.W.2d 451 (1991); *see also In re Kroh Brothers Development Co.,* 117 B.R. 499, 501–02 (W.D.Mo.

1989) (recognizing a distinction between "an alter ego action to impose [on the defendant] an obligation to creditors" and "a substantive consolidation motion enhancing the bankruptcy estate itself"); *In re The Julien Co.,* 120 B.R. 930, 936 (Bankr.W.D.Tenn.1990) ("[A] judgment [based in part on a theory of alter ego] against Mr. Hohenberg for all [the corporate debtor's] debts ... would not be the equivalent of consolidating Mr. Hohenberg's assets and liabilities with those of this debtor."); *cf. Phar–Mor v. Coopers & Lybrand,* 22 F.3d 1228 (3d Cir.1994) ("Because piercing the corporate veil or alter ego causes of action are based upon preventing inequity or unfairness, it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory."). *But see In re Western World Funding,* 52 B.R. 743, 783 (Bankr. D.Nev.1985), *rev'd in part,* 131 B.R. 859 (D.Nev.1990), *rev'd in part,* 985 F.2d 1021 (9th Cir.1993) ("Under the Nevada alter ego doctrine, the corporation has, in some sense, an equitable interest in the assets of its alter ego, because the corporation and the alter ego are identical.").

Even if alter ego liability really is tantamount to consolidating the assets and liabilities of the alter egos, Spartan's criticism is unsound. Unless and until such a finding is made, the corporation and its shareholder remain separate legal entities. Thus litigation between those parties is problematic only *after* it has been judicially determined that one is the other's alter ego.

Another objection to this type of alter ego action is that the corporation and its shareholder are *in pari delicto,* and that the former is therefore precluded from obtaining equitable relief. *See, e.g., Feltman v. Prudential Bache Securities,* 122 B.R. 466, 474 n. 9 (S.D.Fla.1990). One weakness in this argument is that the corporation may truly be a victim of the shareholder's machinations, since it likely is the shareholder who is calling all the shots. *See Kalb,* 8 F.3d at 133; *S.I. Acquisition,* 817 F.2d at 1153. More to the point, the applicability of the "clean hands" doctrine goes to the merits of an action seeking equitable relief, not to the question of standing. *See, e.g., Trans Inter-*

*national Airlines v. International Brotherhood of Teamsters,* 650 F.2d 949, 957 (9th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981) ("[T]he clean hands issue" concerns "the merits" of the case under consideration.); *Warth,* 422 U.S. at 498, 95 S.Ct. at 2204–05 ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."); *Rogan v. Morton,* 167 Mich.App. 483, 486, 423 N.W.2d 237 (1988) ("Standing in no way depends on the merits of the case.").

■ The foregoing arguments, then, are not particularly compelling. But whatever weight they might carry, the important point is that the Michigan courts—as evidenced by the decisions discussed above—would probably not accept either as a basis for denying the Debtor standing. I therefore hold that the trustee has standing under § 541(a)(1) and Michigan law to sue Railcar based on an alter ego theory of liability. *Cf. Kalb,* 8 F.3d at 133 (reaching the same conclusion under Texas law (2d Cir.)); *St. Paul Fire and Marine,* 884 F.2d at 703 (Ohio (2d Cir.)); *Steyr–Daimler–Puch,* 852 F.2d at 136 (Virginia); *Koch,* 831 F.2d at 1346 (Illinois and Indiana); *S.I. Acquisition,* 817 F.2d at 1153 (Texas (5th Cir.)); *Holcomb v. Pilot Freight Carriers,* 120 B.R. 35, 41–42 (M.D.N.C.1990) (North Carolina); *ANR Ltd. v. Chattin,* 89 B.R. 898, 903–04 (D.Utah 1988) (Utah); *Lee Way Holding Co.,* 105 B.R. at 411 (Ohio). *But see Ozark,* 816 F.2d at 1225 (concluding that a corporation cannot bring an alter ego action against its shareholder under Arkansas law); *In re Rehabilitation of Centaur Ins. Co.,* 158 Ill.2d 166, 198 Ill.Dec. 404, 632 N.E.2d 1015 (1994) (rejecting *Koch*'s interpretation of Illinois law).

Some courts have also ruled or suggested that the trustee has authority under § 544(a) to bring an alter ego action in his capacity as a representative of creditors holding claims against the estate. *See Koch,* 831 F.2d at 1348; *In re American Hawk Enters.,* 52 B.R. 395, 399 (E.D.Va.1985), *aff'd on other grounds,* 852 F.2d 132 (4th Cir.1988); *Western World Funding,* 52 B.R. at 781–83; *see also* Steven E. Boyce, *Koch Refining and In re Ozark: The Chapter 7 Trustee's Standing to Assert an Alter Ego Cause of Action,* 64 Am.Bankr.L.J. 315, 319–27 (1990). That section states in pertinent part as follows:

> The trustee shall have, as of the commencement of the case, ... the rights and powers of ...
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains ... a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains ... an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property ... from the debtor ... that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). Other courts have rejected this interpretation of § 544(a). *See, e.g., Ozark,* 816 F.2d at 1230; *Buchanan v. Henderson,* 131 B.R. 859, 864–65 (D.Nev. 1990), *rev'd on other grounds,* 985 F.2d 1021 (9th Cir.1993). This issue has already been resolved in this circuit.

In *DSQ Property Co. v. DeLorean,* 891 F.2d 128 (6th Cir.1989), DSQ sought to enforce a judgment that had been entered against DeLorean by an English court. DeLorean argued that the judgment was unenforceable because of an arbitration agreement and eventual settlement he had reached with the bankruptcy trustee of a corporation owned by DeLorean. Although DSQ was a creditor in the bankruptcy proceeding, the Sixth Circuit concluded that DSQ was not bound by this settlement. *Id.* at 131.

In reaching this conclusion, the court cited *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). *See DSQ,* 891 F.2d at 130–31. In *Caplin,* decided under the former Bankruptcy Act, the Supreme Court ruled that a bankruptcy trustee did not have standing to sue an indenture trustee on be-

half of persons holding debentures issued by the debtor corporation. *Caplin,* 406 U.S. at 434, 92 S.Ct. at 1688. A major reason why the Court so ruled was that it found no statute authorizing such an action. *Id.* at 428–29, 92 S.Ct. at 1685–86. Alluding to that finding, the court in *DSQ* stated that "[t]he Bankruptcy Code still has no provision providing for a bankruptcy trustee to sue third parties on behalf of creditors." *DSQ,* 891 F.2d at 131. Thus while the Sixth Circuit did not explicitly refer to § 544(a), it ruled by clear negative inference that that section does not confer standing on a trustee to assert claims held by estate creditors against third parties. Accordingly, the trustee cannot sue Railcar asserting the rights of Spartan or any other creditor.

■ This does not necessarily mean, however, that the disposition of the trustee's suit against Railcar would not be binding on Spartan. Under hornbook trust law, beneficiaries can be bound by actions taken by or against their trustee. *See, e.g.,* 76 Am.Jur.2d *Trusts* §§ 679 and 680; *Kerrison v. Stewart,* 93 U.S. 155, 160, 23 L.Ed. 843 (1876); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 594 (7th Cir.1993); *Howard v. Pulver,* 329 Mich. 415, 425, 45 N.W.2d 530 (1951); *see also* F.R.Civ.P. 17(a) ("A[ ] ... trustee of an express trust ... may sue in that person's own name without joining the party for whose benefit the action is brought...."). Exceptions to this rule are made if there is fraud or collusion, *Kerrison,* 93 U.S. at 160; or in other instances where the interests of the beneficiary are not adequately represented by the trustee. *Id.* at 160–61; *Retired Chicago Police Ass'n,* 7 F.3d at 594. These same principles apply to creditors of a bankruptcy estate vis-à-vis the trustee. *See In re Medomak Canning,* 922 F.2d 895, 903 (1st Cir.1990); *In re Met–L– Wood Corp.,* 861 F.2d 1012, 1017 (7th Cir. 1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); *Steyr–Daimler–Puch,* 852 F.2d at 135; *In re Dominelli,* 820 F.2d 313, 316–17 (9th Cir.1987); *Meyer*

*Goldberg, Inc. of Lorain v. Goldberg,* 717 F.2d 290, 293 (6th Cir.1983) (Appellants could not intervene as of right in an antitrust action prosecuted by the bankruptcy trustee because they "failed to demonstrate that their interest as stockholders and creditors [of the corporate debtors] is not adequately represented by the Trustee."); *United States v. Schnick,* 66 B.R. 491, 494–95 (W.D.Mo. 1986); *In re Independent Refining Corp.,* 65 B.R. 622, 625–26 (Bankr.S.D.Tex.1986); *In re DeLap,* 44 B.R. 21, 22–23 (Bankr.W.D.Wis. 1984).

■ Thus while a trustee can assert only the alter ego claim of its predecessor in interest, the debtor, in doing so he may well be representing the interests of those creditors that stand to gain if the action is successful. Whether that is the case with respect to Spartan turns on any number of considerations that might impact on the trustee's ability to vindicate Spartan's claim. It may be, for example, that the trustee is vulnerable to defenses that could not be successfully invoked against Spartan. It may also be that the trustee's effectiveness is marred by a conflict of interest, *see Met–L– Wood,* 861 F.2d at 1017, or that Spartan could assert facts in support of an alter ego claim that the trustee could not.

Since no party has argued otherwise, however, I assume for purposes of this opinion that the trustee is able to adequately represent Spartan's interests in prosecuting his alter ego action against Railcar. Accordingly, no purpose would be served in allowing Spartan to maintain an alter ego action that is substantially the same as an action that the trustee is pursuing on behalf not only of Spartan, but many other creditors as well.[6]

To the contrary, considerations of fairness, judicial economy and efficiency dictate that the trustee alone should be permitted to assert an alter ego claim against a shareholder of the debtor. As one court explained: "Statutory and common laws give creditors many rights against transferees similar to

---

**6.** For the sake of clarity, I repeat that the trustee has authority to assert only whatever alter ego claim the Debtor could have asserted; he cannot assert claims against Railcar that might be held by Spartan or other estate creditors. But in maintaining the alter ego action, the trustee's fiduciary status mandates that he act in the best interest of his beneficiaries. It is in this sense that the trustee is acting on Spartan's behalf.

those of the bankruptcy trustee.... Without some limitation on creditors' ability to enforce these rights, the filing of bankruptcy would bring 'a multijurisdictional rush to judgment.' " *Barnett v. Stern,* 93 B.R. 962, 968–69 (N.D.Ill.1988), *rev'd on other grounds,* 909 F.2d 973 (7th Cir.1990) (citation omitted). Thus only the trustee, and not individual creditors, may bring actions to recover fraudulent transfers. *See National Tax Credit Partners v. Havlik,* 20 F.3d 705 (7th Cir. 1994); *NLRB v. Martin Arsham Sewing Co.,* 873 F.2d 884, 888 (6th Cir.), *modified on other grounds,* 882 F.2d 216 (6th Cir.1989); *Barnett,* 93 B.R. at 969; *In re Fulda Independent Co-op,* 130 B.R. 967, 978, 25 C.B.C.2d 889 (Bankr.D.Minn.1991); *In re Hess,* 21 B.R. 465, 467 (Bankr.W.D.Va.1982). Because this reasoning applies with equal force to alter ego actions, *see Keene Corp.,* 164 B.R. at 852, I hold that Spartan does not have prudential standing to pursue its alter ego complaint against Railcar. *See Kalb,* 8 F.3d at 132–33; *Holcomb,* 120 B.R. at 44; *ANR Ltd.,* 89 B.R. at 904; *Keene,* 164 B.R. at 852; *cf. Franchise Tax Board of California v. Alcan Aluminum Ltd.,* 493 U.S. 331, 336–37, 110 S.Ct. 661, 664–65, 107 L.Ed.2d 696 (1990) (Shareholders "have Article III standing to challenge the taxes that their wholly owned subsidiaries are required to pay"; the question of whether the shareholders' injuries were "direct" or "derivative of their ownership interests in" the subsidiaries is one which goes to the issue of prudential standing); *Great Lakes Concrete Pole Corp. v. Eash,* No. 83–1464, 1985 WL 14056 (6th Cir. Dec. 20, 1985) (unpublished; available on LEXIS) (" '[T]o allow these plaintiffs [creditors and shareholders of the debtor corporation] to proceed directly [in a civil RICO action claiming that the defendants had injured the corporation] would be to in effect allow any similarly-situated creditor to proceed directly; and the bankruptcy laws are designed ... to prevent exactly that type of multiplicity of action and to assure that such recoveries as are made are made by the corporation for the interests of all who may have any sort of legitimate claim.' ... [S]hareholders who are also creditors of the corporation, lack standing to bring a RICO claim alleging injury to the corporation

where ... a trustee in bankruptcy for the corporation is also a plaintiff in the action." (quoting the district court)); *The Cromar Co. v. Nuclear Materials and Equipment Corp.,* 543 F.2d 501, 507 (3d Cir.1976) ("[T]he harm alleged [by the plaintiff in a suit brought under the Sherman Act] was derivative. According standing to any stockholder or creditor of an antitrust victim would 'confer upon hundreds or thousands of stockholders' and creditors individual causes of action which could be more efficiently redressed through a single suit by the corporation." (citation omitted)).

The proper mechanism for implementing this holding depends on the status of Spartan's alter ego action. If the trustee removed only Railcar's complaint, then Spartan's complaint against Railcar remains in state court and the appropriate statutory reference is 11 U.S.C. § 362(a), the automatic stay provision. On the other hand, if the entire state court action was removed, then § 362(a) is no longer implicated. *See In re Briggs,* 143 B.R. 438, 455, 27 C.B.C.2d 874 (Bankr.E.D.Mich.1992) ("[T]he automatic stay is designed to stop those collection efforts which occur *outside* the forum of the bankruptcy court."). I therefore must consider the effect of the trustee's notice of removal.

■ With exceptions not relevant here, 28 U.S.C. § 1452(a) permits "[a] party [to] remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action" under 28 U.S.C. § 1334, which grants jurisdiction in the federal courts to hear bankruptcy core and non-core proceedings. By its terms, § 1452 would seem to permit a party to remove less than the entire state court action to federal court. *See, e.g., In re Things Remembered,* 151 B.R. 827, 829 (Bankr.N.D.Ohio, 1993) (noting that the debtor "filed its Notice of Removal in this Court removing only those counterclaims [in the state court action] seeking damages on [a] guaranty"). And this is exactly what the trustee's notice of removal purported to do. The notice cites "the cause of action filed against [the trustee] on the 18th day of No-

vember in 1993 ... by Railcar," and makes no mention of Spartan's complaint. Consistent with the terms of the notice itself, then, I hold that the trustee did not remove Spartan's cause of action. *See In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr. C.D.Cal.1987) ("[T]he scope of what is removed from state court to the bankruptcy court is determined by the removal petition."). I therefore must refer to § 362(a).

The commencement of a bankruptcy proceeding stays "any act to obtain possession of property of the estate ... or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). As explained earlier, the alter ego cause of action constitutes estate property. That being the case, Spartan's prosecution of its state lawsuit is contrary to § 362(a)(3) insofar as it asserts such a cause of action. *See S.I. Acquisition*, 817 F.2d at 1153; *cf. National Tax Credit Partners*, 20 F.3d at 706–07 (contractual obligation made for the benefit of both the debtor partnership and investors in the partnership was estate property, and investors were therefore stayed by § 362(a)(3) from attempting to enforce the obligation).

Last and decidedly least, Spartan asked that "the Court order that the Trustee determine whether or not it wishes to proceed on an alter-ego theory against Railcar." Spartan's Motion for Remand at p. 4. Spartan has a legitimate right to know the trustee's intentions in this regard because creditors may be able to assert an alter ego action which the trustee abandons. *See, e.g., St. Paul Fire and Marine*, 884 F.2d at 700–02; *Steyr–Daimler–Puch*, 852 F.2d at 136; *Koch*, 831 F.2d at 1346 n. 9 and accompanying text. But the trustee has dispelled any reasonable doubts on the subject by filing a complaint against Railcar which sets forth an alter ego theory of liability. Thus it is clear the trustee intends to pursue this potential cause of action against Railcar, and there is no need for an order requiring that he "make up his mind."

For these reasons, I will enter an order granting Spartan's motion for remand insofar as it seeks a determination that only Railcar's Complaint for Declaratory and Other Relief was removed to this Court. The mo-

tion will be denied in all other respects, as will the trustee's motion to consolidate the pending adversary proceedings. The order will declare that Spartan's state-court alter ego action is stayed by § 362(a)(3). Because this opinion resolves the only issues raised both in Railcar's removed complaint as well as its proposed counterclaim for declaratory and other relief, adversary proceeding no. 93–2108 will be dismissed and the order in adversary proceeding no. 93–2072 granting Railcar's motion to amend answer will be set aside and the motion dismissed as moot. Since the question of the trustee's ability to adequately represent Spartan's interests was not squarely put in issue, however, I emphasize that I am willing to reconsider the question should Railcar or Spartan choose to raise it directly. *See Kerrison*, 93 U.S. at 162; *Koch*, 831 F.2d at 1352 n. 14; *Goldberg*, 717 F.2d at 292–94.